ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
BRAYTON✦PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

Attorneys for Plaintiffs

FILED
13 JAN -8 PM 4:03
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

BETTY DOUGLASS, as Wrongful Death Heir, and as Successor-in-Interest to PAUL DOUGLASS, Deceased, and BETTY DOUGLASS, LINDA WOLFE, GARY DOUGLAS, PAUL DOUGLAS, JR., TIMOTHY DOUGLASS, as Legal Heirs of PAUL DOUGLASS, Deceased,

   Plaintiffs,

vs.

LOCKHEED SHIPBUILDING COMPANY, LAKE UNION DRY DOCK & MACHINE WORKS, WATERMAN STEAMSHIP CORPORATION,

   Defendants.

No. CV13-00140 JC

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

## I.
## PARTIES

1.   Plaintiffs in this action are the above-captioned successor-in-interest to, or the personal representative of the estate of Decedent; and the personal representatives on behalf of the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as "Plaintiffs."

2. The person who sustained asbestos-related lung injuries and death as a result of their inhalation of asbestos fibers through the person's occupational exposure to asbestos, hereinafter "Decedent" is, with the date of death: PAUL DOUGLASS died January 9, 2012. BETTY DOUGLASS is the spouse of PAUL DOUGLASS and is hereinafter referred to as "surviving spouse."

3. Decedent sustained an asbestos-related lung disease and death by precisely the following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-containing products at Decedent's jobsites. The pathogenesis of Decedent's asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiffs' complaint and incorporated by reference herein.

4. All of Plaintiffs' claims arise out of a similar series of occurrences: repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at Decedent's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent, resulting in cumulative, progressive, incurable lung diseases.

5. Each Plaintiff claims damages for an asbestos-related disease arising from an identical series of occurrences not dependent on Decedent's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Decedent, caused serious lung disease. The allegations of Plaintiffs regarding the nature of Decedent's asbestos-related diseases, the nature of asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are all identical.

6. Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California,

or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the State of California.

## II.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

7. <u>Jurisdiction</u>: Plaintiff BETTY DOUGLASS is a citizen of the State of South Carolina. Plaintiff(s) BETTY DOUGLASS; LINDA WOLFE; GARY DOUGLAS; PAUL DOUGLAS, JR.; TIMOTHY DOUGLASS, are citizens of the following states, respectively: South Carolina, Oregon, Oregon, Virginia, South Carolina.

Defendants are each corporations incorporated under the laws of and having its principal places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| LOCKHEED SHIPBUILDING COMPANY | Nevada/Maryland |
| LAKE UNION DRY DOCK & MACHINE WORKS | Washington |
| WATERMAN STEAMSHIP CORPORATION | New York |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

8. <u>Venue / Intradistrict Assignment</u>. Venue is proper in the Central District of California as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiffs herein occurred within the County of San Diego, California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

///

# III.

# CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Negligence - Survival)

PLAINTIFF BETTY DOUGLASS AS SUCCESSOR-IN-INTEREST TO THE DECEDENT PAUL DOUGLASS COMPLAINS OF DEFENDANTS LOCKHEED SHIPBUILDING COMPANY, LAKE UNION DRY DOCK & MACHINE WORKS, WATERMAN STEAMSHIP CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

9.  At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a

1  member of, or funded, that researched, studied, manufactured, fabricated,
2  designed, modified, labeled, assembled, distributed, leased, bought, offered for
3  sale, supplied, sold, inspected, serviced, installed, contracted for installation,
4  repaired, marketed, warranted, rebranded, manufactured for others and advertised
5  a certain product, namely asbestos, and other products containing asbestos.  The
6  following defendants, and each of them, are liable for the acts of each and every
7  ALTERNATE ENTITY, and each of them, in that there has been a virtual
8  destruction of Plaintiffs' remedy against each such ALTERNATE ENTITY;
9  defendants, and each of them, have acquired the assets, product line, or a portion
10 thereof, of each such ALTERNATE ENTITY; defendants, and each of them,
11 caused the destruction of Plaintiffs' remedy against each such ALTERNATE
12 ENTITY; each such defendant has the ability to assume the risk-spreading role of
13 each such ALTERNATE ENTITY; and that each such defendant enjoys the
14 goodwill originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| LOCKHEED SHIPBUILDING COMPANY | LOCKHEED SHIPBUILDING AND CONSTRUCTION COMPANY |
| | PUGET SOUND BRIDGE & DRY DOCK COMPANY |
| | PUGET SOUND BRIDGE & DREDGING COMPANY |
| | ASSOCIATED SHIPBUILDERS |
| WATERMAN STEAMSHIP CORPORATION | GULF SHIPBUILDING CORPORATION |

20         10.    At all times herein mentioned, defendants, their ALTERNATE
21 ENTITIES, and each of them, were and are engaged in the business of researching,
22 manufacturing, fabricating, designing, modifying, labeling, assembling,
23 distributing, leasing, buying, offering for sale, supplying, selling, inspecting,
24 endorsing, testing, authorizing, approving, certifying, facilitating, promoting,
25 representing, servicing, installing, contracting for installation, repairing,
26 marketing, warranting, rebranding, manufacturing for others, packaging,
27 specifying, requiring, mandating, or otherwise directing and/or facilitating the use
28 ///

of, or advertising a certain product, namely asbestos and other products containing asbestos.

11. At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Decedent herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by "exposed persons." In part, and without limitation as to other defendants, defendants LOCKHEED SHIPBUILDING COMPANY, WATERMAN STEAMSHIP CORPORATION and LAKE UNION DRY DOCK & MACHINE WORKS, manufactured, modified, serviced and/or repaired asbestos-containing ships and vessels.

12. Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

13. Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that

such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including Decedent herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

14. Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Decedent's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference herein.

15. As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Decedent as set forth in **Exhibit A**, attached to Plaintiffs' complaint and incorporated by reference herein.

16. Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

17. Decedent suffered from a condition related to exposure to asbestos and asbestos-containing products. Decedent was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

18.     As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

19.     As a direct and proximate result of the aforesaid conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value of medial care provided by Decedent's family members measured by, inter alia, the costs associated with the hiring a registered nurse, home hospice, or other service provider, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact costs are known or at time of trial.

20.     As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person, body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and related sequelae, and the mental and emotional distress attendant thereto, and ultimately death, from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven at trial.

21.     As a further direct and proximate result of the said conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits, entitlements, wages, profits, and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs; and leave is requested to amend this complaint to conform to proof at the time of trial.

22.     As a further direct and proximate result of the said conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent's

exposure to asbestos and asbestos-containing products caused severe and permanent injury to Decedent, and ultimately Decedent died on the date previously stated herein.

23. Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

24. Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Products Liability - Survival)

PLAINTIFF BETTY DOUGLASS AS SUCCESSOR-IN-INTEREST TO THE DECEDENT PAUL DOUGLASS COMPLAINS OF DEFENDANTS LOCKHEED SHIPBUILDING COMPANY, LAKE UNION DRY DOCK & MACHINE WORKS, WATERMAN STEAMSHIP CORPORATION, THEIR "ALTERNATE ENTITIES,"AND EACH OF THEM; EACH FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (SURVIVAL), COMPLAIN AS FOLLOWS:

25. Plaintiffs incorporate herein by reference, as though fully set forth herein, each paragraph of the First Cause of Action herein.

26. Defendants, their "alternate entities," and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products

would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

27. Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their ALTERNATE ENTITIES, and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed persons," including Decedent herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and dangerous for use.

28. "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons." Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which Decedent and others similarly situated were exposed.

29. In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products,

including, but not limited to, asbestosis, other lung damages, and cancer.  Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

30.   On or before 1930, and thereafter, said defendants, their ALTERNATE ENTITIES and each of them, were aware that members of the general public and other "exposed persons," who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that members of the general public and other "exposed persons," who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

31.   With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products.  Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and

actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses.  Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

32. The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing products.  In pursuance of said financial motivation, said defendants, their ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Decedent.

33. Plaintiffs allege that the aforementioned defendants, their ALTERNATE ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing products, to be safe for their intended use, but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

34. Plaintiffs relied upon defendants', their ALTERNATE ENTITIES, and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products.  As a direct,

foreseeable, and proximate result thereof, Decedent suffered permanent injury and death as alleged herein.

35. As a direct and proximate result of the actions and conduct outlined herein, Decedent have suffered the injuries and damages herein alleged.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities", and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION
(Negligence - Wrongful Death)

PLAINTIFF BETTY DOUGLASS, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-IN-INTEREST TO PAUL DOUGLASS DECEASED, AND PLAINTIFF(S) BETTY DOUGLASS; LINDA WOLFE; GARY DOUGLAS; PAUL DOUGLAS, JR.; TIMOTHY DOUGLASS, AS LEGAL HEIR(S) OF DECEDENT, COMPLAIN OF DEFENDANTS LOCKHEED SHIPBUILDING COMPANY, LAKE UNION DRY DOCK & MACHINE WORKS, WATERMAN STEAMSHIP CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

36. Plaintiffs incorporate by reference each paragraph contained within the First Cause of Action as though fully set forth herein.

37. The heirs at law of the Decedent and their relationship to the Decedent is set forth below:

| NAME | RELATIONSHIP TO DECEDENT |
|---|---|
| BETTY DOUGLASS | Spouse |
| PAUL DOUGLAS, JR. | Son |
| GARY DOUGLAS | Son |
| LINDA WOLFE | Daughter |
| TIMOTHY DOUGLASS | Son |

38. The individuals set forth as heirs constitute all of the surviving heirs of the Decedent.

39. As a direct and proximate result of the conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-containing products caused Decedent to develop diseases from which condition Decedent died.  Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of filing the complaint.

40. At all times prior to his death, Decedent was a faithful and dutiful spouse to the surviving spouse.

41. As a direct and proximate result of the conduct of defendants, and each of them, and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss of care, society, comfort, attention, services, and support of Decedent all to the damage of Decedent's heirs.

42. As a further direct and proximate result of the conduct of defendants, and each of them, and the death of Decedent, Decedent's heirs have incurred funeral expenses in an amount currently not ascertained.

WHEREFORE, Plaintiffs pray judgment against defendants, and each of them, as hereinafter set forth.

### FOURTH CAUSE OF ACTION
(Products Liability - Wrongful Death)

PLAINTIFF BETTY DOUGLASS, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-IN-INTEREST TO PAUL DOUGLASS DECEASED, AND PLAINTIFF(S) BETTY DOUGLASS; LINDA WOLFE; GARY DOUGLAS; PAUL DOUGLAS, JR.; TIMOTHY DOUGLASS, AS LEGAL HEIR(S) OF DECEDENT, COMPLAIN OF DEFENDANTS LOCKHEED SHIPBUILDING COMPANY, LAKE UNION DRY DOCK & MACHINE WORKS, WATERMAN STEAMSHIP CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A FOURTH, SEPARATE, FURTHER AND

DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

43. Plaintiffs incorporate herein by reference, as though fully set forth herein, each paragraph of the First, Second and Third Causes of Action herein.

44. As a direct and proximate result of the conduct of defendants, and each of them, Decedent's heirs have sustained the injuries and damages previously alleged.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## IV.

## DAMAGES AND PRAYER

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them in an amount to be proved at trial in each individual case, as follows:

(a) For Plaintiffs' general damages according to proof;

(b) For Plaintiffs' loss of income, wages and earning potential according to proof;

(c) For Plaintiffs' medical and related expenses according to proof;

(d) For Plaintiffs' cost of suit herein;

(e) For damages for fraud according to proof; and

(f) For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated: 1/7/13                             BRAYTON❖PURCELL LLP

By: _____
David R. Donadio, Esq., S.B. #154436
Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs hereby demand trial by jury of all issues of this cause.

Dated: __1/7/13__   BRAYTON❖PURCELL LLP

By: _____
David R. Donadio, Esq., S.B. #154436
Attorneys for Plaintiffs

# EXHIBIT A

EXHIBIT A

Decedent: PAUL DOUGLASS, Deceased.

Decedent's injuries: Decedent was diagnosed with leukemia on or about November 2005, with asbestosis on or about March 2002, and with asbestos-related pleural disease on or about October 2007

Decedent died on January 9, 2012.

Retirement Status: Decedent retired from his last place of employment at regular retirement age. He had therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Dept. of Defense | Puget Sound Naval Shipyard, Bremerton, WA | Machinist | 5/1/1943-9/17/1943 |
| US Navy | TRIUMPH (AM-323), Naval Station (32nd St.) San Diego, CA | Fireman 2nd Class | 2/3/1944-10/12/1946 |
| US Navy | YMS 422 | Engine Man 2nd Class | 10/12/1946-11/10/1946 |
| US Navy | SCOTER (AM-381) | Engine Man 2nd Class | 11/30/1946-9/17/1947 |
| Jones & Laughlin Steel Company, 1121 Avenue of the Americas New York, NY | Jones & Laughlin Steel Company, Oil City, PA | Inspector | 9/1947-9/1953 |
| US Navy Reserve | CAPRICORNUS (AKA-57) | Engineman Diesel 2nd class | 10/12/1950-12/7/1950 |

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Howard White Whites Appliance Store 518 Main Street Clarion, PA | White Ford Sales Clarion, PA | Salesman | 10/1953-6/1954 |
| Franklin Auto Inc. Venango, Co. Franklin, PA | Ford Dealership/ Franklin Auto, Franklin, PA | Salesman | 7/1954-9/1956 |
| Pal Motors, Inc. 368/72 Seneca Street Oil City, PA | Pal Motors Dealership Oil City, PA | Salesman | 4/1954-12/1954 |
| Joy Manufacturing Company, 301 Grant Street, Pittsburgh, PA | Joy Manufacturing Company, Franklin, PA | Clerk | 10/1955-6/1957 |
| General Dynamics Corporation, 2044 India Road Charlottesville, VA | General Dynamics-Convair, San Diego, CA; General Dynamics Kearny Mesa, CA | Inspector | 7/1957-12/1964: |
| | U.S. Air Force Forbes Air Force Base, Topeka, KS | | 2 years |
| | U.S. Air Force Walker Air Force Base Roswell, NM | | 2 years |
| I-T-E Imperial Corporation 10 Gould Center Rolling Meadows, IL | Gould Inc., Downey, CA | Chief Inspector | 1/1977-1978 |
| Robinson Helicopter 2091 Airport Drive Torrance, CA | Robinson Helicopter Torrance, CA | Quality Control Manager | 1980 (2 months) |
| Lennox Hearth Products, Inc., 1110 W. Taft Avenue Orange, CA | Marco Manufacturing Company, Lynwood, CA | Manager | 1980-1986 |

FRICTION:

1935 Chevrolet: Decedent purchased this vehicle used. Decedent performed one brake replacement job on this vehicle in 1947. Decedent used his breath and a rag to wipe the dust from the brake drums. Decedent took the brake drums to HUMPHREY'S MACHINE SHOP in National City, California, to have them turned and to have the brake pads riveted to the brake shoes. Decedent completed

1  an engine overhaul on this vehicle, which included removing and replacing asbestos-containing head gasket, water pump gasket, oil gasket and exhaust gaskets. Decedent lightly sanded the replacement brake parts with an emery cloth, sand paper and a block. Decedent purchased the replacement parts from an unknown auto parts store in National City, California.

1948 Chevrolet: Decedent purchased this vehicle used. Decedent performed a brake replacement job and partial engine overhaul on this car in 1950 or 1951, which included removing and replacing asbestos-containing head gasket, water pump gasket, oil gasket and exhaust gaskets. Decedent used his breath and a rag to wipe the dust from the brake drums. Decedent purchased all replacement parts for the Chevrolet from the GENERAL MOTORS dealer in Oil City, Pennsylvania. Decedent took his brakes in for grinding to a shop in Oil City, Pennsylvania called Dumphey. Plaintiff currently contends decedent was exposed to asbestos during these automobile repairs.